IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY M. RUFFIN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01 C 4898 |
| | ) | |
| | ) | Judge Mark Filip |
| KANE COUNTY SHERIFF | ) | |
| DEPARTMENT, BRIAN LEWIS, | ) | |
| GARY WALTON, VERNE BJOURNSEN, | ) | |
| KENNETH RAMSEY, | ) | |
| BRIAN GORCOWSKI, | ) | |
| JOHN D.L. SHAFER, | ) | |
| AND PETER ALMEIDA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Johnny M. Ruffin ("Mr. Ruffin" or "Plaintiff"), has sued Defendants—Kane

County Sheriff Department ("KCSD"), and KCSD Officers Brian Lewis ("Officer Lewis") and

Gary Walton ("Officer Walton"), KCSD Sergeants Verne Bjournsen ("Officer Bjournsen") and

Thomas A. Friederich ("Officer Friederich"), KCSD Sheriff Kenneth Ramsey ("Sheriff

Ramsey"), Elgin Police Department Detectives Brian Gorcowski ("Officer Gorcowski") and

Peter Almeida ("Officer Almeida"), and Illinois State Trooper John D.L. Shafer ("Officer

Shafer") (collectively, "Officers")—for alleged violations of his constitutional rights under 42

U.S.C. § 1983. Ruffin also sues for alleged violations of state law. These violations allegedly

occurred in connection with Mr. Ruffin's arrest on June 26, 1999, following Ruffin's carjacking

and shooting spree and his subsequent conviction for multiple violent felonies in two Illinois

counties. The case is before the Court on Officer Shafer's motion to dismiss (D.E. 142[1]), and a motion to dismiss filed by Defendants KCSD, Sheriff Ramsey, and Officers Walton, Lewis, Friederich, and Bjournsen (the "KC Defendants"). (D.E. 140.) As explained below, the motion to dismiss brought by Officer Shafer is granted. The KC Defendants' motion to dismiss is denied in substantial part, with the exception that the Court dismisses Ruffin's request for a criminal investigation of the Defendants by the U.S. Attorney's Office, and further dismisses Count V insofar as it is pleaded against Sheriff Ramsey in his official capacity and Count VIII, which purports to advance a non-existent claim under the Illinois Local Governmental and Governmental Employees Tort Immunity Act. In so ruling, the Court notes that some of the KC Defendants' arguments in their motion to dismiss may ultimately prove correct, but under applicable precedent, the arguments must be addressed within the context of summary judgment analysis. The denials of the motions to dismiss are without prejudice to the KC Defendants' abilities to present their arguments again, as they deem appropriate, at the summary judgment stage.

## FACTUAL BACKGROUND

In setting forth the applicable facts, the Court draws principally from Ruffin's Second Amended Complaint.[2] (D.E. 146 ("Second Amended Complaint").) For present purposes, the

---

[1] The docket entries in this case are designated as "D.E. __."

[2] The Court also takes judicial notice of undisputed facts from the transcript of a public court proceeding in which Ruffin pleaded guilty to charges in Kane County, Illinois, which is attached to the KC Defendants' motion to dismiss. (See D.E. 140, Ex. B (June 25, 2003 Transcript of Proceedings in Case No. 99 CF 2040 in the Circuit Court of Kane County, Illinois) ("Transcript").) In addition, the Court considers a Notice of Intent to Sue form and a letter regarding that notice, which are referenced by Ruffin in the Second Amended Complaint (Second Amended Complaint at 4) and are referenced and attached by Ruffin to his original Complaint.

Court accepts the allegations as true, as precedent directs. The Court takes no position on whether the allegations are actually well-founded. In reviewing the multiple iterations of the complaint that Ruffin has filed, it appears clear that he has substantially modified his account of what happened—for example, going so far as to scratch out certain averments he testified to in his initial verified complaint, and to substantially modify other central themes of that verified account—so as to avoid certain Rule 12(b)(6) arguments under *Heck v. Humphrey*, 512 U.S. 477 (1994), that Defendants had advanced and that might have proved fatal to Ruffin's case. In any event, at this stage of the case, Ruffin's present factual assertions must be taken as true under the law, and the Court does so.

I.   Alleged Incidents Surrounding Ruffin's Arrest On June 26, 1999

On June 26, 1999, Ruffin was driving in an Isuzu Rodeo SUV ("Rodeo") eastbound on Illinois Interstate Route 72 near Elgin, Illinois. (Second Amended Complaint ¶ 20.)[3]  At

_____

(*See* Complaint at 72 (Notice of Intent To Sue filed with the Circuit Clerk for Kane Count on July 26, 2000) & 73 (July 26, 2000 letter from Ruffin to the Circuit Court of Kane County stating that he had originally filed the letter on June 1, 2000 in the Kane County Court in Elgin, Illinois).) Precedent teaches that a district court may consider matters of public record without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (collecting numerous circuit court cases); *accord, e.g., United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) (per curiam) (teaching that, in analyzing a motion to dismiss, "[t]he district court may also take judicial notice of matters of public record.") (collecting authorities); *Corbett v. Biggs*, No. 01 C 7421, 2005 WL 991903, at *5 & n.5 (N.D. Ill. Mar. 23, 2005) (taking judicial notice of a state appellate court opinion).

[3] Although Ruffin omits this fact from his present complaint, it appears clear that the SUV was stolen, with Ruffin having carjacked it at gunpoint from Ms. Rosy Lenza in Rockford, Illinois. (Transcript at 11-12.) This carjacking is distinct from an earlier carjacking in which Ruffin murdered an individual in Winnebago County. (*Id.* at 12.) The record is unclear whether the shootings underlying the two other attempted murder charges against Ruffin occurred in connection with that Winnebago County murder, or whether they occurred in other, discrete incidents in Winnebago County prior to his apprehension.

approximately 9:54 a.m., Ruffin was pulled over by Officer Walton. (*Id.*) Officer Walton had been alerted by the KCSD Communication Division at around 9:30 a.m. to be on the lookout for a suspect who was responsible for a murder and two attempted murders. (*Id.* ¶¶ 24, 47.) Ruffin alleges he was afraid when he was pulled over, because of the area's reputation for racial profiling. (*Id.* ¶ 22.) Officer Walton sat in his squad car for 1-2 minutes without approaching Ruffin or giving any orders. (*Id.* ¶ 23.)

Ruffin maintains that his fear of the area's reputation for racial profiling motivated him to flee in the Rodeo. (*Id.*) This fear apparently was so intense that Ruffin proceeded, as he so testified in his initial complaint, to lead the police in a 100+ MPH chase down crowded interstate highways for some fifteen miles, with Ruffin apparently so fearful that he ran through a tollbooth and only stopped when his vehicle was pushed off the road by one of the chasing officers. (D.E. 1 at 12-14.)

When Ruffin fled, Officer Walton put out an A.P.B. over the KCSD radio and Illinois State Police Department ("ISPD") emergency radio network. (Second Amended Complaint ¶¶ 24, 49.) In his broadcast message, Officer Walton provided Ruffin's location and pointed out that Ruffin fit the description of the suspect who was wanted for the murder of one individual and the attempted murder of two other individuals in the Rockford, Illinois area. (*Id.*) Officer Walton's radio address reached Officers Lewis, Almeida, Gorcowski, Friederich and Shafer, in addition to other officers. (*Id.* ¶ 25.) As explained, Ruffin thereafter led Officer Walton and various other officers on a 100+ MPH chase throughout various crowded highways, including the I-90 highway in suburban Chicago (D.E. 1 at 12-14); the chase ended only when Officer Shafer rammed the driver's-side back end of the Rodeo, causing the Rodeo to roll over and land on its

4

roof at the intersection of High Point and River Roads. (Second Amended Complaint ¶ 26.)

As a result of the crash, and because Ruffin was not wearing his seat belt, Ruffin hit his head on the dashboard and windshield of the Rodeo, rendering him unconscious for a few seconds with various injuries. (*Id.* ¶¶ 27, 29.) When Ruffin regained consciousness, he was laying on his side between the front passenger seat and the driver seat in the inverted Rodeo. (*Id.* ¶ 29.) Within seconds after the crash, Officers Walton and Shafer exited their squad cars and moved toward the Rodeo. (*Id.* ¶ 30.)

In his initial verified complaint, Ruffin testified that after he regained consciousness, "Defendant Lewis and Walton collectively pumped 7 bullets into the body [back, shoulders, neck, spinalcord, arms, etc. . .] of the Plaintiff, in rapid succession. . . ." (D.E. 1 at 18) (punctuation and brackets in original).) Ruffin further testified in his initial complaint that he "did not provoke this excessive use of deadly force upon himself." (*Id.*)

This is not Ruffin's present theory of how events unfolded. In the Second Amended Complaint, Ruffin explains that, when the initial shooting started, Officer Walton fired five gunshots at Ruffin from the rear of the inverted Rodeo, striking Ruffin in the upper right arm and shattering the rear window. (Second Amended Complaint ¶ 30.) Ruffin has also deleted averments from his initial complaint explaining that this shooting was without provocation on Ruffin's part (*see* D.E. 1 at 18)—likely in recognition of Defendants' arguments under *Heck*, *supra*, relating to Ruffin's subsequent guilty plea to, *inter alia*, aggravated assault of a police officer. (D.E. 140, Ex. B (June 25, 2003 Transcript of Proceedings in Case No. 99 CF 2040 in the Circuit Court of Kane County, Illinois) ("Transcript") at 15).) Ruffin presently asserts that Officer Walton ceased firing when he felt that Ruffin posed no more threat of resistance.

5

(Second Amended Complaint ¶ 31.)

Ruffin now further maintains that, approximately 40 to 60 seconds after Officer Walton stopped firing, Officer Lewis arrived on the scene of the crash. (*Id.* ¶ 32.) Officer Lewis exited his squad car and allegedly then shot Ruffin without provocation four more times in the back, neck and shoulders, shattering Ruffin's spine. (*Id.*) While Officer Lewis was shooting Ruffin, Officers Walton and Shafer allegedly were both covering Ruffin with their weapons; Officers Walton and Shafer did not attempt to stop Officer Lewis from shooting, and instead allegedly "only encouraged Defendant Lewis to continue on." (*Id.* ¶ 33.) During the shooting by Officer Lewis, allegedly well after Ruffin was effectively apprehended, Ruffin allegedly did not offer any resistance or pose any threat to any of the officers. (*Id.* ¶ 34.)

After Ruffin was shot by Officer Lewis, Ruffin was allegedly pulled out of the Rodeo by Officer Almeida. (*Id.* ¶ 38.) Officer Almeida put Ruffin on his stomach and handcuffed his hands behind his back. (*Id.*) Once Ruffin was handcuffed, Officer Lewis then allegedly kicked Ruffin three times in his right-upper shoulder and neck area, aggravating the injuries that were inflicted during the shootings. (*Id.* ¶ 39.) While Ruffin was moaning in pain, Officer Lewis purportedly said "that [sic] what you get nigger, for killing one of our people!"; Ruffin asserts that Officer Lewis, who is white, allegedly was referring to Ruffin's involvement in the murder of an individual and attempted murder of two other individuals in Winnebago County who happened to be white. (*Id.* ¶¶ 40, 53.) Although Officers Walton, Shafer, Almeida and Gorcowski were in close proximity, allegedly they did not intervene to stop Officer Lewis from kicking Ruffin, and instead allegedly encouraged Officer Lewis to continue. (*Id.* ¶ 41.)

6

II.     Ruffin's Prosecutions And Convictions in Winnebago County and in Kane County, Illinois

Ruffin was prosecuted in the Circuit Court of Winnebago County, Illinois (the "Winnebago County Case") for murder and two attempted murders in or around Rockford, Illinois. (*Id.* ¶ 65; *see also* Transcript at 3.) A jury concluded beyond a reasonable doubt that Ruffin committed the charged murder, and it further convicted Ruffin of the other two violent felonies, although it is unclear whether he was convicted of two counts of aggravated battery of another with a firearm, or two counts of attempted murder, or some combination thereof. In any event, it appears that Ruffin has been sentenced to at least thirty years imprisonment in the Illinois Department of Corrections for those Winnebago County convictions.

Ruffin was also prosecuted in Kane County, Illinois (the "Kane County Case") for the June 26, 1999 high-speed chase prior to his apprehension, and for his misconduct during and after the chase. (Transcript at 11.) On June 25, 2003, Ruffin pleaded guilty in the Kane County Case to three counts: unlawful possession of a stolen motor vehicle, aggravated assault of an officer in the form of pointing a weapon at law enforcement after the chase concluded, and aggravated fleeing and eluding a police officer. (Transcript at 2-5, 13, 16.) Ruffin is currently incarcerated at the Lawrence Correctional Facility in Sumner, Illinois, serving a sentence of at least thirty years in the Winnebago County Case (*i.e.*, for the murder and two aggravated battery with a firearm and/or attempted murder convictions) and various concurrent sentences in the Kane County Case (*i.e.*, the case involving the aggravated assault by pointing a weapon at law enforcement). (Second Amended Complaint ¶ 4; Transcript at 3.[4])

_____

[4] *See also* Official Website of the Illinois Department of Corrections, Prisoner Locator and Record Site (www.idoc.state.il.us/subsections/search/inms.asp). The website further

III.    KCSD Investigation Into Ruffin's Allegations of Misconduct During His Arrest

Sheriff Ramsey initiated an investigation into Officer Lewis's shooting of Ruffin during the June 26, 1999 arrest. (Second Amended Complaint ¶ 61.) It appears that this investigation was initiated in response to a complaint from Ruffin. Officer Friederich conducted the investigation. (*See id.* ¶ 67.)

Ruffin claims that Officer Lewis made false or conflicting statements during this investigation. (*See id.* ¶ 64.) First, Officer Lewis allegedly stated that Ruffin had pointed a gun at him and that he had shot Ruffin in self-defense. (*Id.* ¶ 62.) Officer Lewis's statements were used by the Kane County State's Attorney to charge Ruffin with aggravated assault on Officer Lewis in Case No. 99 CF 1856; according to Ruffin, this complaint was voluntarily dismissed on June 30, 1999. (*Id.*)

However, Ruffin claims that Officer Lewis made conflicting statements to Officer Friederich for purposes of the KCSD investigation. Namely, Ruffin maintains that Lewis said that "he (Lewis) came upon the crashed scene and he exited his (Lewis) vehicle with gun out [sic] the holster and positioned himself next to an Illinois State Trooper car, and witnessed the plaintiff laying on his right-side with [sic] back towards him, in the inverted S.U.V., that when he (Lewis) saw the plaintiff's right hand pointing at Deputy Walton out the rearview window, so he immediately fired shot [sic] on the plaintiff until he poses [sic] no more threats." (*Id.* ¶ 63(a).) Officer Lewis also allegedly testified at Ruffin's criminal trial in the Winnebago County Case

suggests that at least some of the Kane County sentences were imposed consecutively, as Ruffin's projected parole date is 12/22/2052; however, the Court will give Ruffin the benefit of the doubt for present purposes and assume that he has only been sentenced to 30 years for the Kane County crimes.

that "he (Lewis) never witnessed the vehicle collision between Plaintiff's S.U.V. and Shafer's squad car. And he (Lewis) also admits that during the high speed chase of Plaintiff; he (Plaintiff) was driving towards him (Lewis)," and Ruffin contends that this testimony corroborates his present account that Officer Lewis shot Ruffin 40 to 60 seconds after Officer Walton stopped shooting. (*Id.* ¶ 65 (punctuation in original).)

In addition to alleging that Officer Lewis made conflicting statements during the investigation, Ruffin also alleges that Officer Bjournsen planted ammunition at the scene of the crash during the collection of evidence. (*Id.* ¶ 67.) Officer Bjournsen then purportedly filed a fabricated police report stating that Ruffin was in possession of ammunition. (*Id.* ¶ 68.) The Kane County State's Attorney allegedly later filed a criminal indictment against Ruffin for unlawful possession of ammunition in Case No. 99 CF 1856; again, according to Ruffin, this claim was voluntarily dismissed on June 30, 1999. (*Id.* ¶ 68.) Officer Bjournsen also gave testimony in the Winnebago County Case that purportedly conflicted with his earlier report about finding ammunition at the scene, with Ruffin stating that Bjournsen testified that "during his [sic] (Bjournsen) collecting evidence, found that plaintiff was never in possession of any ammunitions [sic] during the shooting and arrest." (*Id.* ¶ 69.)

Officer Friederich and Sheriff Ramsey allegedly were aware of Officer Lewis's and Officer Bjournsen's purportedly inconsistent statements, fabricated evidence, and perjurious testimony. (*Id.* ¶ 73.) However, they did not take action for the alleged misconduct during the investigation or during the arrest and did not discipline either Officer Lewis or Officer Bjournsen. (*Id.*)

IV.  Procedural History

Ruffin filed his initial complaint in the instant suit on June 25, 2001.  (D.E. 1 (also, "Complaint").)  On September 5, 2001, Judge Rebecca Pallmeyer stayed the case on Defendants' motion, pending final judgments in the state criminal cases against Ruffin.  (D.E. 11.)  The stay was lifted twenty-three months later, on August 6, 2003, following a notice from the Kane County State's Attorney of Ruffin's guilty plea and related convictions for aggravated assault of a police officer with a firearm, aggravated fleeing and eluding from the police, and possession of a stolen motor vehicle.  (*See* D.E. 28; D.E. 30.)

On October 27, 2003, Ruffin filed a motion for leave to file an amended complaint, terminating certain defendants and adding others, which was granted on July 9, 2004.  (D.E. 38; D.E. 58 ("First Amended Complaint").)  Ruffin amended his complaint one additional time and filed his Second Amended Complaint on August 23, 2005.  (Second Amended Complaint.)

In the Second Amended Complaint, which is the subject of Officer Shafer's and the KC Defendants' motions to dismiss, Ruffin brings the following counts: Count I (Excessive Force against Officer Lewis for shooting Ruffin); Count II (Excessive Force against Officer Lewis for kicking Ruffin); Count III (Failure To Intervene against Officers Walton, Shafer, Gorcowski and Almeida); Count IV (Racially Motivated Conspiracy To Retaliate against Officers Lewis, Walton, Shafer, Gorcowski and Almeida); Count V (Custom or Policy of Inadequate Training, Inadequate Investigation, and Negligent Handling of Officer Misconduct against Sheriff Ramsey and KCSD); Count VI (Aggravated Battery against Officers Lewis, Walton, Shafer, Gorcowski and Almeida); Count VII ("Willful and Wanton Misconduct" against Officers Lewis, Walton, Shafer, Gorcowski, Almeida, Friederich, Bjournsen, Sheriff Ramsey and KCSD); and Count VIII

10

(a claim purportedly advanced under the Illinois Local Governmental and Governmental Employees Tort Immunity Act against KCSD). (*Id.*)

Ruffin requests $5 million in compensatory damages, $15 million in punitive damages, and $2.5 million in "continuing" damages. (*Id.* at 7(p).) In addition, Ruffin asks for a declaration that his rights were violated, an investigation by the United States Attorney's Office into the misconduct of the Defendants,[5] and costs and attorneys fees. (*Id.*)

## JURISDICTION

Pursuant to 28 U.S.C. § 1331, the Court has original jurisdiction over Ruffin's federal claims in Counts I-V, which arise under 42 U.S.C. § 1983. In addition, pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over Ruffin's state law claims in Counts VI-VIII because they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." *Id.*; *see, e.g.*, *Jinks v. Richland County, South Carolina*, 538 U.S. 456, 458-59 (2003) (quoting 28 U.S.C. § 1367(a)).

---

[5] Ruffin has been granted permission by the Court to proceed *in forma pauperis* in this litigation. (D.E. 5.) Once a person files an application to proceed *in forma pauperis*, the Court must analyze the claims advanced in the complaint and dismiss them if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(I)-(iii). This independent review is mandatory, even in cases where the plaintiff subsequently pays the filing fee or any portion thereof. *See* 28 U.S.C. § 1915(e)(2); *see also Brinson v. McKeeman*, 992 F. Supp. 897, 904 & n.18 (W.D. Tex. 1997) (once a plaintiff files leave to proceed *in forma pauperis*, the court must review the complaint under § 1915(e)(2), even if the plaintiff subsequently pays the filing fee). A claim is frivolous within the meaning of Section 1915(e)(2)(B)(I) when it, *inter alia*, lacks an arguable basis in law or in fact. *See, e.g.*, *Baker v. AME Church Judicial Council*, 320 F. Supp. 2d 786, 788 (N.D. Ind. 2004) (collecting cases, including *Denton v. Hernandez*, 504 U.S. 25, 31 (1992)).

In this matter, Ruffin's claim for relief includes a demand for an investigation by the U.S. Attorney's Office into the misconduct of the Defendants. Because the Court has no authority to grant such relief, the Court dismisses this request as frivolous.

## LEGAL STANDARDS

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). In ruling on a motion to dismiss, the court must assume all facts alleged in the complaint to be true and view the allegations in the light most favorable to the plaintiff. *See, e.g., Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004). Dismissal for failure to state a claim is appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003).

Defendants have moved to dismiss Ruffin's claims under Rule 12(b)(6), arguing that Ruffin's state law claims and some of his Section 1983 claims are barred by the statute of limitations. (*See, e.g.*, D.E. 140 at 5, 9.) In considering the propriety of raising such issues through a Rule 12(b)(6) motion, Seventh Circuit precedent instructs that the statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and that "[c]omplaints need not anticipate or attempt to defuse potential defenses." *United States Gypsum v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2004) (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)). However, "when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit." *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (collecting authorities). In this regard, while dismissals under Rule 12 on grounds of a time-bar are not the norm, an extensive body of appellate precedent teaches that such dismissals, in appropriate cases, are unexceptional.

*See, e.g., Kauthar SDN BHD v. Sternberg,* 149 F.3d 659, 670-71 & n.14 (7th Cir. 1998) (affirming dismissal of various securities fraud claims, on *de novo* review, as time-barred under Rule 12(b)(6), and collecting extensive analogous circuit court precedent); *Treganza v. Great Am. Communications Co.,* 12 F.3d 717, 718 (7th Cir. 1993) (stating that if a litigant "pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court.") (collecting cases).

Finally, where, as here, a plaintiff is proceeding *pro se,* it is the well-established law of this circuit that the complaint is to be generously construed. *See, e.g., McCormick v. City of Chicago,* 230 F.3d 319, 325 (7th Cir. 2000). However, a *pro se* plaintiff can plead himself out of court by pleading facts that defeat his case. *See, e.g., Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999) (citation omitted).

### DISCUSSION

I.     Officer Shafer's Motion To Dismiss

Officer Shafer moves to dismiss the claims against him on the basis that Ruffin failed to serve him within 120 days of filing the First Amended Complaint, and so failed to comply with Fed. R. Civ. P. 4(m). (*See* D.E. 144 at 2.) In the alternative, Officer Shafer argues that Ruffin's claims against him should be dismissed as time-barred by the applicable statute of limitations. (*See id.* at 4.) Without reaching the merits of these arguments, the Court respectfully dismisses with prejudice all claims against Officer Shafer pursuant to Fed. R. Civ. P. 41(b).

On September 21, 2005, Officer Shafer filed his motion to dismiss Plaintiff's Second Amended Complaint. (D.E. 142.) The Court directed Ruffin to respond to Officer Shafer's motion by October 28, 2005. (D.E. 145.) Ruffin did not respond to Officer Shafer's motion

within the briefing schedule set by the Court. In an order dated June 20, 2006, the Court once again specifically directed Ruffin to file a response. (D.E. 172.) In the June 20, 2006 order, the Court *sua sponte* extended Ruffin's deadline to file until July 7, 2006. (*Id.*) The Court noted that if Ruffin failed to respond by that date, his claims against Officer Shafer would be dismissed. (*Id.*) Officer Shafer's motion to dismiss has now been on file for several months, and Ruffin has failed to respond, notwithstanding express directives to do so and a warning that a failure to respond would result in a dismissal of the claims against Officer Shafer for want of prosecution.

The District Court's authority to dismiss a case for want of prosecution "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962); *see also id.* at 629 ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted.") (footnote omitted). "Once a party invokes the judicial system by filing a lawsuit, it must abide by the rules of the court; a party can not decide for itself when it feels like pressing its action and when it feels like taking a break . . . ." *James v. McDonald's Corp.*, 417 F.3d 672, 681 (7th Cir. 2005).

Since dismissal with prejudice is a severe sanction, Seventh Circuit precedent instructs that a court should not dismiss with prejudice for want of prosecution without giving a plaintiff notice that the Court is contemplating such a dismissal. *See, e.g., Aura Lamp & Lighting, Inc. v. Int'l Trading Corp.*, 325 F.3d 903, 908 (7th Cir. 2003) (citing *Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir. 1993)). The Court's June 20, 2006 order *sua sponte* extended the long-past October 28, 2005 deadline to respond to Officer Shafer's motion. (D.E. 172.) In addition, the

14

order expressly and clearly warned Plaintiff that the Court was contemplating a dismissal of his claims against Officer Shafer in the absence of a timely response. (*Id.* ("To the extent that Plaintiff wishes to continue to pursue his claims against Officer Shafer, the Court respectfully directs him to file a response by July 7, 2006, or his claims against Officer Shafer will be dismissed.").) This warning put Ruffin on notice of the consequences of failing to respond by the extended deadline. *See, e.g., Harrington v. City of Chicago*, 433 F.3d 542, 549-50 (7th Cir. 2006) (affirming dismissal for failure to prosecute where district court gave an explicit dismissal warning).

While the Court is not eager to dismiss claims with prejudice for want of prosecution, there are the interests of Officer Shafer to consider. *See, e.g., Ball*, 2 F.3d at 759 (stating that "[a] defendant has legitimate interests that a dismissal for failure to prosecute may be essential to protect"); *see also id.* ("Defendants are not second-class citizens in our courts. The fact of being sued creates no presumption that the person . . . sued has in fact committed a wrong."). Officer Shafer indicates in his motion that he retired from the ISPD on December 21, 2003, and "he was not named in this action [*i.e.*, in the First Amended Complaint] until more than three years after it was filed and after he retired . . . ." (D.E. 144 at 3.) This case is only at the motion to dismiss stage and, barring some unforeseen development, it will likely continue into the intermediate future. In light of Ruffin's lack of diligence in pursuing the claims against Officer Shafer, it would be unreasonably prejudicial to the now-retired Officer Shafer to leave him entangled in this case for the indefinite future. *See Ball*, 2 F.3d at 759 (discussing the potential prejudice to a defendant and taking account of the fact that "[a] protracted lawsuit ties up the defendant's time and prolongs the uncertainty and anxiety that are often the principal costs of being sued.").

15

Ruffin has failed to prosecute his case against Officer Shafer. (By way of comparison, Ruffin has vigorously pursued his claims against the KC Defendants. *See e.g.*, D.E. 151 (November 30, 2005 motion by Ruffin for leave to file additional pages to his memorandum of law in response to the KC Defendants' motion to dismiss).) As a result, because Ruffin has not prosecuted his claims against Officer Shafer in conformity the with Court's directives and (extended) deadlines, the Court exercises its discretion to dismiss the claims against Officer Shafer with prejudice pursuant to Rule 41(b), as the Court previously and expressly warned it would.

II.      Motion To Dismiss Brought By The KC Defendants

A.      Plaintiff's Excessive Force Claims Are Not *Heck*-Barred

Ruffin alleges that Officer Lewis used excessive force by shooting him and kicking him (Counts I and II) in effectuating his arrest, and so violated his Fourth Amendment rights and 42 U.S.C. § 1983. The KC Defendants assert that Ruffin's excessive force claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), on the grounds that "plaintiff's voluntary plea and conviction of aggravated assault and his claim of excessive force in his shooting are legally mutually exclusive." (D.E. 140 at 9.) The Court respectfully finds that the principles in *Heck*, as applied in Seventh Circuit caselaw, do not bar Ruffin's excessive force claim.

At the threshold, the Court rejects the contention that whether Ruffin entered an *Alford* plea to having committed an aggravated assault on Officer Walton bears on the Court's *Heck* analysis. Ruffin appears to assert that he pleaded guilty in the Kane County Case pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), where the court accepts a guilty plea despite defendant's claim of innocence. (*See* D.E. 157 at 10.) In *Alford*, the Supreme Court directed that

16

guilty pleas could be accepted constitutionally where the defendant protested his innocence, but cautioned that "pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea." *Id.*, 400 U.S. at 38 & n.10. Assuming *arguendo* that Ruffin's guilty plea was entered pursuant to *North Carolina v. Alford*, which the transcript of his plea hearing does not explicitly reflect, various federal appellate courts have concluded that "a conviction based on an *Alford* plea can be used to impose *Heck's* favorable termination rule." *Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006); *accord, e.g., id.* at 397 n.3 ("[V]arious Courts of Appeals have deemed an *Alford* plea the procedural equivalent of a non-*Alford* guilty plea.") (collecting cases); *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (concluding that plaintiff's claim of false arrest was *Heck*-barred based on plaintiff entering an *Alford* plea to assault with a deadly weapon); *see generally Blohm v. Comm'r of Internal Revenue*, 994 F.2d 1542, 1554 (11th Cir. 1993) ("A guilty plea is an 'admission of all the elements of a formal criminal charge'. . . . Guilty pleas must be rooted in fact before they may be accepted.") (quoting *McCarthy v. United States*, 394 U.S. 459, 466) (other citations omitted)).

Turning to whether Ruffin's excessive force claims are *Heck*-barred in the instant case, the recent Seventh Circuit opinion in *VanGilder v. Baker*, 435 F.3d 689 (7th Cir. 2006), is a helpful guide. In *VanGilder*, the Seventh Circuit reversed a decision granting summary judgment for a defendant police officer on a Section 1983 excessive force claim, based on a determination that *Heck* did not bar such a claim. The plaintiff in *VanGilder* was arrested for public intoxication; he was taken to the hospital for a blood test, which the plaintiff admitted resisting, leading to a violent altercation between him and the arresting officer. *Id.* at 690-91. According to the plaintiff, the arresting officer struck him about the head, and then punched him in the face,

17

leaving bruises and breaking bones in his face. *Id.* at 691. The plaintiff was convicted of resisting arrest and later brought a Section 1983 action alleging excessive force against the officer for his actions at the hospital. *Id.* at 691-92.

In *VanGilder*, the Seventh Circuit stated that: "*Heck* holds that before a § 1983 plaintiff may recover damages for alleged harm 'caused by actions whose unlawfulness would render a conviction or sentence invalid,' the plaintiff must first prove that his conviction or sentence has been reversed, expunged, or called into question by the grant of a petition for habeas corpus." *Id.* at 691 (quoting *Heck*, 512 U.S. at 486-87). To properly apply the principles in *Heck*, "a district court must analyze the relationship between the plaintiff's § 1983 claim and the charge on which he was convicted." *Id.*

Consequently, the Seventh Circuit framed the *Heck* issue as "whether an action against Baker [the defendant officer] for excessive use of force necessarily implies the invalidity of VanGilder's [the civil plaintiff's] conviction for resisting." *VanGilder*, 435 F.3d at 692. The court answered that question in the negative, stating that:

> [A]s a threshold matter, it is clear that a judgment for VanGilder, should he prevail, would not create two conflicting resolutions arising out of the same or identical transaction. VanGilder does not collaterally attack his conviction, [or] deny that he resisted Baker's order to comply with the blood draw or challenge the factual basis presented at his change of plea hearing. Rather, VanGilder claims that he suffered unnecessary injuries because Baker's response to his resistance—a beating to the face that resulted in bruises and broken bones— was not, under the law governing excessive force, objectively reasonable.

> Were we to uphold the application of *Heck* in this case, it would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages.

*Id.* (citations and internal quotation marks omitted); *accord, e.g., Gregory v. Oliver*, 226 F. Supp.

2d 943, 952 (N.D. Ill. 2002) (Shadur, J.) ("It is apparent that in some instances a Section 1983 claim does not contradict the events that result in plaintiff's convictions—two obvious examples would be an officer's unjustified imposition or excessive force in an overreaction to an arrestee's assault, or the imposition of excessive force after the event that led to a resisting-arrest conviction . . . .") (citation omitted).

Another recent Seventh Circuit case, *Okoro v. Callaghan*, 324 F.3d 488 (7th Cir. 2003), plays a role in the *Heck v. Humphrey* analysis. In *Okoro*, a plaintiff convicted on drug-related charges after federal agents found drugs in his house, brought a Section 1983 suit for an alleged illegal seizure of gems and cash during the search of his house by the defendant agents. *Id.*, 324 F.3d at 489-90. The Seventh Circuit held that *Heck* barred the plaintiff's claim, because although there was a theoretical possibility, divorced from the facts and actual reality, that success for the plaintiff on his Section 1983 claims would not invalidate or call into question his criminal conviction, the plaintiff had made "allegations that [were] inconsistent with the conviction's having been valid." *Id.* at 490. *Okoro* thus teaches that the Heck analysis does not proceed like some sort of abstract mathematical proof, divorced from the facts of the case and arguments at hand; instead, the court looks at the actual theory being advanced by the civil plaintiff/criminal defendant and assesses, in a pragmatic and real-world manner, whether that actual theory calls into question the validity of the plaintiff's prior criminal conviction(s). *See, e.g., id.* ("Okoro [plaintiff] adhered steadfastly to his position that there were no drugs, that he was framed; in so arguing he was making a collateral attack on his conviction, and *Heck* holds that he may not do that in a civil suit, other than a suit under the habeas corpus statute . . . ."); *accord, e.g., Trejo*, 2004 WL 2608285, at *13 (stating that *Okoro* instructs "that whether a particular claim is *Heck*-

barred turns on whether the plaintiff's actual claim as framed by the facts alleged would be inconsistent with the underlying state court criminal conviction.").

In the Kane County Case, Ruffin pleaded guilty to, *inter alia*, aggravated assault against Officer Walton, in violation of 720 ILCS 5/12-2(a)(6). (*See* Transcript at 4, 12.) The relevant elements of aggravated assault are as follows:

§ 12-2. Aggravated assault

(a) A person commits an aggravated assault when, in committing an assault, he:

\*\*\*

(6) Knows the individual assaulted to be a peace officer . . . while the officer . . . is engaged in the execution of any of his official duties . . . and the assault is committed other than by the discharge of a firearm in the direction of the officer.

720 ILCS 5/12-2(a)(6). A critical fact, therefore, for Ruffin's conviction of aggravated assault on Officer Walton is that he assaulted Walton while he was performing his duties. The factual basis described in the transcript from his plea hearing that undergirds Ruffin's conviction on this charge is that Ruffin, "knowingly and without lawful authority and while armed with a handgun[,] pointed a gun at Deputy . . . Gary Walton of the . . . Kane County sheriff's department, a peace officer engaged in the execution of his official duties[,] and therefore placed said officer in reasonable apprehension of receiving a battery." (Transcript at 12.)

The Court finds that Ruffin's Section 1983 allegations more resemble the permissible claims in *VanGilder* than the problematic ones in *Okoro*. In the operative complaint, at least, Ruffin does not attack the validity of his conviction for aggravated assault or challenge the factual basis essential to his conviction at his plea hearing. *See VanGilder*, 435 F.3d at 692 (permitting plaintiff's excessive force claim to stand where he "[did] not collaterally attack his

conviction, deny that he resisted [Officer] Baker's order to comply with the blood draw, or

challenge the factual basis presented at his change of plea hearing."). Ruffin's Second Amended

Complaint (at least in material part, as discussed further below) does not deny that Ruffin pointed

a weapon at Officer Walton—instead, the Second Amended Complaint does not refer to this

action one way or the other. Similar to *VanGilder*, a finding for Ruffin in this suit would not

create two conflicting resolutions out of the same incident. Instead, a victory for Ruffin in the

present matter could plausibly mean that a jury found that, although Ruffin committed

aggravated assault against Officer Walton, either "he suffered unnecessary injuries because"

Officer Lewis's response to the assault was not objectively reasonable, *VanGilder*, 435 F.3d at

692, or he suffered the use of excessive force "after the event" that led to the aggravated assault

conviction. *See Gregory*, 226 F. Supp. 2d at 952; *see also Trejo*, 2004 WL 2608285, at *13 n.12

(acknowledging possibility of excessive force claim by plaintiff concerning events that occurred

after resisting arrest misconduct of criminal defendant/civil plaintiff). Accordingly, under the

Seventh Circuit's decision in *VanGilder*, Ruffin's excessive force claim is not barred by his

conviction for resisting arrest.[6]

    Although Ruffin's excessive force claims are not barred by *Heck*, the Court cautions that

---

[6] The KC Defendants do not assert an argument that any aspect of Ruffin's claims are
collaterally estopped by issues decided in the course of his conviction. Instead, Defendants argue
that "[t]he allegations throughout this complaint are at odds with the facts contained in the
plaintiff's voluntary plea hearing in Kane County. Comparing the face of the complaint with the
transcript, the plaintiff's allegations lack credibility . . . ." (D.E. 140 at 10.) Likewise, in their
reply, the KC Defendants seem to argue that the Court should compare and weigh allegations
across different versions of the Complaint. (*See* D.E. 161 at 2-3.) Decisions relating to the
credibility of a plaintiff's allegations or other evidence are not properly before the Court at the
stage of a motion to dismiss, and accordingly the Court declines to resolve putative credibility
issues.

aspects of the Second Amended Complaint and Ruffin's subequent filings veer towards an impermissible collateral attack or questioning of his conviction, which would result in a *Heck*-bar of the affected claim(s). As discussed above, Ruffin's theory of his excessive force claims against Officer Lewis—at least now, in the Second Amended Complaint, his initial complaint advanced a theory that was quite different—is that Ruffin was shot by Officer Walton and left unresisting, and then, 40-60 seconds later, Ruffin was shot by Officer Lewis with the approval of the other officers. Ruffin further alleges now that, after being pulled from the Rodeo, he was kicked by Officer Lewis. (Second Amended Complaint ¶¶ 27-34.) These theories do not involve a denial that Ruffin pointed a gun at Officer Walton, as was established and is required to support his prior criminal conviction in Kane County.

Yet, in the allegations for Count IV, Ruffin states that the initial shooting by Officer Walton was unprovoked. (*Id.* ¶ 51.) This allegation is clearly inconsistent with Ruffin's conviction for aggravated assault on Officer Walton and could provide grounds for applying *Heck* if Ruffin attempts to maintain this position going forward or at trial. *See Okoro*, 324 F.3d at 490 (holding that where a plaintiff "makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit."). However, because this allegation is inconsistent with the bulk of Ruffin's present account of how the shooting transpired, the Court has given Ruffin the benefit of the doubt and disregarded the allegation, at least for the present time, in the *Heck* analysis.

More explicitly calling into question the validity of Ruffin's conviction are Ruffin's arguments in his response to the KC Defendants' motion to dismiss. (*See* D.E. 157, Ex. 2.) Along these lines, Ruffin asserts that "he has alway maintain thru out [sic] his Winnebago

22

County Jury trial and his Kane County plea hearing that he never pointed a gun at any of the Sheriff deputies or poses [sic] any threat towards Walton or any other officers." (*Id.* at 10.) Ruffin also refers twice to the fact that he pointed a gun at Officer Walton as an "alleged" fact. (*Id.* at 10.)

The Court cautions Ruffin that if he maintains that this theory or some analog is true, then he effectively is contending that he "was convicted in error" because Ruffin pointing a gun at Officer Walton "was an essential part of the evidence against him in the criminal case" in which he pleaded guilty; accordingly, he would be "barred by *Heck* unless and until he knocks out his convictions, which he has never done." *Okoro*, 324 F.3d at 489. Therefore, while the Court finds that Ruffin's excessive force claims are not barred based on the theory of the claims in the Second Amended Complaint, Ruffin is forewarned that any future arguments or allegations that collaterally attack his conviction may result in his civil suit being *Heck*-barred. *Accord, e.g.*, *Okoro*, 324 F.3d at 489.

B.    Counts I and II – Plaintiff Has Stated Claims For Excessive Force

The KC Defendants also move to dismiss the excessive force claims against Officer Lewis on the grounds that Officer Lewis is entitled to qualified immunity for his actions. (D.E. 140 at 12.) The Court respectfully disagrees with the KC Defendants.

"Police officers are entitled to qualified immunity for actions taken during a stop or arrest insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (internal quotation marks and citation omitted). In determining whether an officer is entitled to qualified immunity, "the first inquiry must be whether a constitutional right

would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *accord, e.g.*, *Payne v. Pauley*, 337 F.3d 767, 775 (7th Cir. 2003). If no constitutional right has been violated, that is the end of the qualified immunity analysis. *See Saucier*, 533 U.S. at 201. If a violation could be made out on the facts taken in the light most favorable to the plaintiff, the next step "is to ask whether the right was clearly established"—that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201-02 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Precedent teaches that "[t]his inquiry . . . must be undertaken in light of the specific context of the case," *id.* at 201, and that "the doctrine of qualified immunity leaves 'ample room for mistaken judgments' by police officers." *Payne*, 337 F.3d at 776 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

The constitutional violation at issue in Counts I and II is excessive force, and when a claim of excessive force arises in the context of an arrest, the officer's use of force is evaluated "according to the reasonableness standard of the Fourth Amendment." *Morfin v. City of East Chicago*, 349 F.3d 989, 1004 (7th Cir. 2003) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Supreme Court has enunciated a fact-specific test for analyzing excessive force claims. *See Graham*, 490 U.S. at 396; *see also Payne*, 337 F.3d at 778 ("A police officer's use of force is unconstitutional if, judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.") (internal quotation marks and citation omitted). Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 349 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). This constitutional inquiry is an

24

objective one. *See Payne*, 337 F.3d at 778. Because the KC Defendants do not argue that the allegations relating to Officer Lewis's use of force, taken as true for the purposes of a Rule 12(b)(6) motion, fail to make out a claim for excessive force, the Court turns directly to the question of whether the force allegedly used by Officer Lewis violated a "clearly established Fourth Amendment protection" so that he is not entitled to immunity. *See Saucier*, 533 U.S. at 207. "In delimiting the contours of a right" for qualified immunity purposes, the Court is directed to consider "case law on point or in closely analogous areas." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994) (citation omitted).

In the operative complaint, Ruffin has set forth an account of events leading up to his arrest, wherein police received information that suggested that he was a murder suspect, and then he led police on a high-speed car chase, which culminated in a violent crash. After the crash, Ruffin was laying in the crashed Rodeo and was shot multiple times by Officer Walton. (Second Amended Complaint ¶ 30.) Then, according to Ruffin, Officer Walton stopped shooting because he determined that Ruffin posed no more threat of resistance, and 40 to 60 seconds passed, at which time Officer Lewis allegedly shot him on multiple occasions. (*Id.* ¶ 31-32.)

The Supreme Court in *Tennessee v. Garner* stated, in the context of evaluating the use of deadly force to prevent the escape of a felony suspect: "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Id.*, 471 U.S. at 11. Even in situations where an individual has fired at police and then attempted to escape, the Seventh Circuit has found that it may be excessive force to shoot that individual after he has been disarmed. *See Dye v. Wargo*, 253 F.3d 296, 298 (7th Cir. 2001) ("[S]hooting a disarmed and passive suspect is a clear example of excessive force in violation of the fourth amendment.); *accord, e.g., Ellis v.*

25

*Wynalda*, 999 F.2d 243, 247 (7th Cir. 1993) (reversing grant of summary judgment to defendant officer on claim of excessive force because the officer's shooting could conceivably have occurred after "the immediate danger had passed."). Therefore, taking the facts as presented by Ruffin, meaning that Ruffin was not trying to escape and was not armed or resisting, "it would have been sufficiently clear to a reasonable officer that [Officer Lewis allegedly] used excessive force in the situation he confronted." *Payne*, 337 F.3d at 780.

In terms of Officer Lewis's alleged actions after Ruffin was arrested, Ruffin claims that he was laying on his stomach, handcuffed, unresisting and moaning, when Officer Lewis kicked him three times in the neck and shoulder area. It is well-established that taking punitive actions once a suspect has been handcuffed and subdued is an exercise of excessive force. *See, e.g.*, *Gregory*, 226 F. Supp. 2d at 950 (concluding that it was clearly established that a leg sweep by an officer on a handcuffed suspect was an use of excessive force); *Taylor v. Kveton*, 684 F. Supp. 179, 185 (N.D. Ill. 1988) (Aspen, J.) (finding that defendant officers were not entitled to qualified immunity because "no reasonable officer would have believed that his actions in kicking an unresisting [plaintiff] . . . were lawful under the Fourth Amendment reasonableness standard."). Therefore, Officer Lewis is not entitled to qualified immunity for either Count I or Count II, because Ruffin has sufficiently established that a reasonable officer in Officer Lewis's situation would have believed the alleged force used before and after the arrest to be excessive.

C.  Count III - Plaintiff Has Stated A Claim For Failure To Intervene

In Count III, Ruffin brings his "closely linked" claim of excessive force by reason of failure to intervene against all the officers at the scene of the arrest on June 26, 1999. *See, e.g.*, *Abdullahi v. City of Madison*, 423 F.3d 763, 767 (7th Cir. 2005). While a plaintiff must establish

a defendant's personal responsibility for any claimed deprivation of a constitutional right, direct participation by the defendant is not required. *See Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (citation omitted). In particular, for failure to intervene claims, precedent teaches that an officer may not fail to at least attempt to stop other officers who summarily punish a third person in his or her presence. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (citing *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972)).

A police officer may be liable under Section 1983 for failing to intervene to prevent other law enforcement officers from inflicting excessive force against a citizen if that officer had reason to know that:

> (1) excessive force was being used, (2) a citizen had been unjustifiably arrested, or (3) any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*See Yang*, 37 F.3d at 285 (collecting authorities; emphasis included in original); *accord, e.g.*, *Miller*, 220 F.3d at 495 (citing *Yang*, 37 F.3d at 285). "[A] 'realistic opportunity to intervene' may exist whenever an officer could have 'called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop.'" *Abdullahi*, 423 F.3d at 774 (quoting *Yang*, 37 F.3d at 285) (internal punctuation and inserted text in original).

Ruffin's failure to intervene allegations are that 1) Officer Walton "refused to intervene and stop" Officer Lewis from shooting him, and in fact encouraged the behavior, and 2) Officers Walton, Almeida, and Gorcowski further failed to intervene to stop the kicking by Officer Lewis and also encouraged the behavior. (Second Amended Complaint ¶¶ 44-45.) The KC Defendants argue that in Ruffin's "allegations surrounding the events of the arrest, there is no indication or

allegation that any of the officers present had any reason to know that either a shooting or a kick was going to take place, much less the opportunity to intervene." (D.E. 140 at 11.) Respectfully, the Court finds that in Count III, Ruffin has alleged a claim for failure to intervene, and the KC Defendants are not entitled to a dismissal on the grounds of qualified immunity. Ruffin's claim may or may not ultimately survive summary judgment review, but one cannot fairly say, taking his allegations and reading all reasonable inferences and ambiguities in his favor, that Ruffin has failed to allege a claim or otherwise pleaded himself out of court by making clear that the claim cannot succeed.

First, in deciding whether Officer Walton had a reasonable opportunity to intervene to prevent Officer Lewis's shooting, Ruffin's allegations put Officer Walton at the scene because he was the initial shooter. (*See* Second Amended Complaint ¶ 44.) Thus, Officer Walton would have seen, under Ruffin's allegations, Officer Lewis firing multiple shots at an unresisting, unarmed Ruffin and may have had the opportunity, at the least, to tell him to stop. *See Miller*, 220 F.3d at 495; *Yang*, 37 F.3d at 285.

Ruffin further alleges that, after the arrest, Officers Walton, Gorcowski, and Almeida saw Officer Lewis kicking Ruffin multiple times after he had been handcuffed and placed on his stomach, and that far from intervening, the officers allegedly encouraged this use of excessive force. *See, e.g., Taylor*, 684 F. Supp. at 183 (holding that there was sufficient evidence that the officers failed to intervene and prevent an alleged beating so as to warrant rejection of summary judgment motion). The allegations raise the possibility, adequate for the purposes of a motion to dismiss that, even without advance warning, the Officers could have had reasonable time to intervene. Thus, the Court concludes that Ruffin's allegations state a claim for a constitutional

28

violation against Officers Walton, Gorcowski, and Almeida for failure to intervene.

Turning to the second step of the qualified immunity inquiry, the Court asks if it would have been clear to a reasonable officer in any of the Officers' situation that Officer Lewis was using unlawful force on Ruffin—"thus triggering the duty to intervene." *Abdullahi*, 423 F.3d at 775. If the events unfolded as Ruffin alleges, Officer Lewis's acts of force would have been clearly excessive. Therefore, at this stage of the proceedings, qualified immunity must be denied.

D.     Count IV - Plaintiff Has Stated a Claim For Conspiracy

In Count IV, Ruffin brings a claim of "Racial Motivated Conspiracy To Retaliate." (Second Amended Complaint at 7(g).) The KC Defendants argue that the conspiracy claim should be dismissed because Ruffin's allegations are improperly vague. (D.E. 140 at 11.) The Court respectfully disagrees with the KC Defendants and finds that Count IV, generously construed, states a claim for conspiracy under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

1.     Section 1983 Conspiracy

"For liability under § 1983 to attach to a conspiracy claim, defendants must conspire to deny plaintiffs their constitutional rights . . . ." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996) (citation omitted). As a general matter, no heightened pleading requirements apply to a claim of conspiracy. *See, e.g., Tierney v. Vahle*, 304 F.3d 734, 742 (7th Cir. 2002). In discussing Section 1983 conspiracy claims, the Seventh Circuit has emphasized that "it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 1996); *accord, e.g., Hobley v. Burge*, No. 03 C 3678, 2004 WL 1243929, at *11 (N.D. Ill. June 3, 2004) (Aspen, J.) (quoting *Walker*, 288 F.3d at 1007).

29

Here, Ruffin has indicated the state actors who allegedly were party to the conspiracy (Officers Lewis, Walton, Gorcowski, and Almeida), the general purpose (to deprive Ruffin of his constitutional rights to, *inter alia*, be free from the receipt of excessive force), and the date (June 26, 1999). (*See* Second Amended Complaint at 7(g).) The Court concludes that Ruffin has provided the KC Defendants with sufficient notice of his Section 1983 conspiracy claim, and as a result has satisfied the requisite "basic pleading standards." *See, e.g., Hobley*, 2004 WL 1243929, at *12 (denying a motion to dismiss where "the allegations supporting a conspiracy . . . clearly put Defendants on notice of Hobley's [plaintiff's] claims and comport with the basic pleading standards for a conspiracy as enunciated in *Walker*, 288 F.3d at 1007.").

2. Section 1985 Conspiracy

Count IV of the Second Amended Complaint may also be construed as stating a claim for conspiracy to interfere with Ruffin's civil rights under 42 U.S.C. § 1985(3). Precedent teaches that to state a claim under Section 1985(3), a complaint must allege:

'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'

*Bowman v. City v. City of Franklin*, 980 F.2d 1104, 1109 (7th Cir. 1993) (quoting *United Brotherhood of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983)); *accord, e.g., Webb II v. City of Joliet*, No. 03 C 4436, 2005 WL 1126555, at *6 (N.D. Ill. May 4, 2005) (Guzman, J.) (citing *Trautvetter v. Quick*, 916 F.2d 1140, 1153 (7th Cir. 1990) (citation omitted)).

The Court determines that Ruffin has sufficiently alleged a claim for conspiracy under

30

Section 1985(3). In Count IV, Ruffin states that Officers Lewis, Walton, Gorcowski, and Almeida had an agreement to "retaliate against the plaintiff and deprive him of his civil right to be free from excessive use of deadly force . . . because plaintiff is an African-American who was allege [sic] to be involved in the killing and wounding [sic] three white males . . . ." (Second Amended Complaint ¶ 57.) Ruffin further alleges that the defendant Officers were white, or of "European" origin, and that Officer Lewis uttered a racial slur when he kicked him. (*Id.* ¶¶ 56, 57.) Thus, Count IV contains the material elements of a Section 1985(3) conspiracy: that the Officers present at the scene of the arrest conspired to deprive Ruffin of equal protection of the laws because of his race, that the officers used and/or tolerated the use of excessive force in arresting him in furtherance of the conspiracy, and as a result deprived him of his constitutional rights. *See, e.g.*, *Webb II*, 2005 WL 1126555, at *6 (finding plaintiff's allegations stated a Section 1985(3) claim). Accordingly, the KC Defendants' motion to dismiss Count IV is denied.

E.      Count V - Plaintiff Has Stated Section 1983 *Monell* Claims

Count V, generously construed, asserts that KCSD and Sheriff Ramsey are responsible for depriving Ruffin of his constitutional rights on the basis of: 1) a custom or policy of inadequately investigating excessive force claims, specifically by ignoring that employees attempt to cover-up wrongdoing in arrests and in investigations; 2) a custom or policy of denying disciplinary actions against KCSD employees who have been involved in excessive force or commit perjury during investigations; and 3) a custom or policy of inadequate training of white KCSD employees not to use excessive force upon African-American suspects. (Second Amended Complaint at 7(m).) Ruffin appears to assert these claims against the KCSD, and against Sheriff Ramsey in both his individual and his official capacity. (*See id.* at 7(n).)

31

1.   KCSD

In reviewing Ruffin's allegations of municipal liability, the Court bears in mind that "[t]he Supreme Court has made it very clear that federal courts must not apply a heightened pleading standard in civil rights cases alleging § 1983 municipal liability." *McCormick v. City of Chicago*, 230 F.3d 319, 323 (7th Cir. 2000) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)). Case law recognizes three ways in which a municipality can be said to have violated an individual's constitutional rights: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *See McCormick*, 230 F.3d at 324 (7th Cir. 2000) (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)).

In the present matter, the allegations in Count V include reference to KCSD "policy," "custom," and actions taken by Sheriff Ramsey. (*See, e.g.*, Second Amended Complaint at 7(m).) The bulk of Ruffin's allegations in Count V point to the third basis for municipal liability, *i.e.*, that a policy maker encouraged and condoned acts of excessive force. What is much more thinly set forth are any allegedly unconstitutional KCSD customs and policies regarding investigation, discipline, and training—in fact, Ruffin makes no factual allegations relating to the customs or policies, and instead merely states legal conclusions. (*Id.*) However, recent Seventh Circuit case law directs that such allegations sufficiently state a claim for municipal liability.

The Seventh Circuit analyzed a similar claim by a *pro se* plaintiff in *McCormick*:

32

> Here, there is no question that McCormick [plaintiff] has included in his
> complaint a number of conclusions designed to get him over the pleading bar for
> his municipal liability claim. The smattering of phrases like "highest
> policymaking officers" and "widespread custom" throughout McCormick's
> complaint is a common practice designed to ensure that the complaint will
> withstand scrutiny under liberal notice pleading. Some would assert that the
> inclusion of this language should be "enough." Others suggest that more is
> needed; that the facts included in the complaint must lead to the legal conclusions
> drawn. We believe that it is the former view, and not the latter, that *Leatherman*
> and its progeny support.

*Id.* 230 F.3d at 324-325; *accord, e.g., Corbett v. Biggs*, No. 01 C 7421, 2005 WL 991903, at *10

(N.D. Ill. Mar. 23, 2005) (concluding plaintiff had stated a claim for municipal liability where he

alleged the basis of liability and the general nature of the alleged policy, despite providing "little

in the way of factual allegations"). Therefore, because Ruffin has made allegations that

sufficiently give the KCSD notice of his municipal liability claim for customs, policies or official

actions relating to failure to investigate, discipline or train its officers with regards to using

excessive force, the Court denies the KC Defendants' motion to dismiss Count V as against

KCSD. *See, e.g., Ramos v. Town of Cicero*, No. 04 C 2502, 2005 WL 1838334, at *4 (N.D. Ill.

July 28, 2005); *Frieri v. City of Chicago*, 127 F. Supp. 2d 992, 995 (N.D. Ill. 2001).

2.      Official Capacity Claims Against Sheriff Ramsey

Precedent instructs that "[a] § 1983 claim against an individual in his official capacity is

really a claim against the municipality." *Catchings v. City of Chicago*, No. 04 C 6110, 2006 WL

1371440, at *2 (N.D. Ill. May 15, 2006) (Gettleman, J.) (citing *Gossmeyer v. McDonald*, 128

F.3d 481, 494 (7th Cir. 1994)); *accord, e.g., id.* at *4 (dismissing Section 1983 individual

capacity claims against superintendent and former superintendent of the Chicago Police

department where the city was already a party to the lawsuit). Here, Ruffin has already filed a

claim against KCSD, and therefore the Court dismisses Count V against Sheriff Ramsey in his official capacity. *Accord id.*

### 3. Individual Capacity Claims Against Sheriff Ramsey

As an initial matter, Sheriff Ramsey moves to dismiss all federal claims against him as time-barred. (D.E. 140 at 7.) Courts look to the personal injury laws of the state where the injury occurred to determine the statute of limitations in a Section 1983 case, and Illinois has a two-year statue of limitations for personal injury claims. *See Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993) (citations omitted); *accord, e.g., Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998) (collecting cases). Federal law defines the accrual date of Section 1983 claims and establishes that such claims "accrue when the plaintiff knows or should knew that his or her constitutional rights have been violated." *Kelly*, 4 F.3d at 511 (collecting cases).

Ruffin filed his motion to amend seeking to bring claims against Sheriff Ramsey on October 27, 2003 (D.E. 38), for conduct that accrued, at the latest, during the trial in the Winnebago County Case in January 2000. In analyzing whether the limitations period was exceeded, the Court adheres to the Illinois tolling provision relating to judicial stays of an action and accordingly does not count the twenty-three months that the case was stayed by order of Judge Pallmeyer, from September 5, 2001 (D.E. 11) through August 6, 2003 (D.E. 30). *See* 735 ILCS 5/13-216 (2006).[7] Starting with the January 2000 accrual date, *i.e.*, the latest possible date

---

[7] Under applicable precedent, Illinois tolling doctrines are incorporated into the two-year statute of limitations period that is borrowed for purposes of the Section 1983 claims. *See, e.g., Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001) ("Because the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application, federal courts must also borrow the state's tolling rules-including any equitable tolling doctrines.") (internal quotation marks, punctuation and citation omitted); *accord, e.g., id.* (analyzing a statute of limitations argument relating to the plaintiff's Section 1983 claim under

that Ruffin's claims against Sheriff Ramsey could accrue, and accounting for the judicial stay, the Court concludes that by filing his motion to amend on October 27, 2003, Ruffin sufficiently brought his Section 1983 claims against Sheriff Ramsey within the 24 month limitations period. Thus Ruffin's Section 1983 claims against Sheriff Ramsey are not time-barred.

As for the substance of the claims brought against Sheriff Ramsey in his individual capacity, the Seventh Circuit has taught that "an individual cannot be held liable in a 1983 action unless he caused or participated in an alleged constitutional deprivation." *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993) (citation omitted); *accord, e.g., Boyce v. Moore*, 314 F.3d 884, 888 (7th Cir. 2002). To be held responsible under supervisory liability, the supervisor must "'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see. He must in other words act either knowingly or with deliberate, reckless indifference.'" *Corbett*, 2005 WL 991903, at *10 (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988)) (internal punctuation in *Corbett*).

The Second Amended Complaint alleges that Sheriff Ramsey initiated, oversaw, and approved the investigation into the Officers' conduct during his arrest, and that Sheriff Ramsey was aware of the alleged inadequate nature of and the alleged misconduct during that investigation. (Second Amended Complaint at 7(j)-7(m).) These allegations are sufficient to state claims against Sheriff Ramsey in his individual capacity for facilitating or condoning the use of excessive force. *See, e.g., Catchings*, 2006 WL 1371440, at *3-4 (finding that plaintiff had stated a claim for supervisory liability where he alleged "knowledge and facilitation or

735 ILCS 5/13-216, the "relevant tolling statute"); *Smith v. City of Chicago Heights*, 951 F.2d 834, 841 (7th Cir. 1992) (collecting Supreme Court cases).

consent" by the defendants to the constitutional violation). The Court further notes that the potential applicability of a *Heck*-bar—as to the claims concerning the investigation—is too unclear to resolve definitively at the motion to dismiss stage. *Heck* would appear to preclude any claim that would suggest that the investigation of the Sheriff was flawed because Ruffin was, in fact, blameless or did not actively threaten at least Officer Walton by pointing a gun at Walton. It is unclear, however, what is the essence of Ruffin's claim, so the analysis must await further development of the record, as and if appropriate in this regard.

As for Ruffin's putative claim for failure to train officers to prevent the use of excessive force, the Second Amended Complaint alleges no facts showing that Sheriff Ramsey knew or had reason to know that Officer Lewis would use excessive force, such that he could be said to have turned a "blind eye" to the need for training. However, taking Ruffin's allegations as true, if there were a policy or custom of failing to adequately train KCSD officers regarding the use of force, it is at least possible that Sheriff Ramsey would have known of such a policy or custom. *See, e.g.*, *Corbett*, 2005 WL 991903, at *11 (deciding that plaintiff had stated a claim for supervisory liability for failure to train against the defendant police chief). Mindful of the more generous pleading standards applied to *pro se* complaints under Seventh Circuit law, the Court finds that Ruffin has at least *pleaded* a claim for supervisory liability against Sheriff Ramsey based on a failure to train. *Accord id.* The defense is free to revisit this subject, if and as appropriate, in the context of summary judgment.

F.      Counts VI and VII - Plaintiff's State Law Claims Are Not Time-Barred

The KC Defendants also move to dismiss as time-barred Ruffin's state law claims,

36

Counts VI and VII, Aggravated Battery and Willful and Wanton Misconduct respectively.[8] (*See* D.E. 140 at 7.) At the present time, the Court declines to find Ruffin's state law claims time-barred within the context of a motion to dismiss. As explained below, the limitations argument may well be meritorious, but the issue can be evaluated more fairly and more confidently within the context of summary judgment analysis.

The parties agree that the statute of limitations for state law claims against a municipality or its employees in Illinois is one year. *See, e.g., Long v. McDermott*, No. 03 C 6101, 2004 WL 1088351, at *3 (N.D. Ill. May 13, 2004) (Zagel, J.) (citing 745 ILCS 10/8-101 (Illinois Tort Immunity Act)). Count VI, Aggravated Battery, arose from conduct that occurred during Ruffin's arrest on June 26, 1999; therefore, because Ruffin did not file his Complaint until June 25, 2001, this claim would appear to be time-barred unless the limitations period was tolled. Under a generous construction, Count VII's claim of Willful and Wanton Conduct includes allegations relating to Ruffin's arrest and the KCSD investigation in 1999, as well as Ruffin's allegations relating to alleged false testimony given in the Winnebago County Case in January 2000. (*See* Second Amended Complaint at 7(n); *see also* D.E. 157, Ex. 2 at 4.) Thus, all claims at issue in Count VII apparently would be time-barred unless saved by tolling.

In his response to the KC Defendants' motion to dismiss, Ruffin raises a putative tolling

---

[8] Separately, the Court dismisses Count VIII, "Illinois Local Governmental And Governmental Employees Tort Immunity Act," (Second Amended Complaint at 7(o)), as to all Defendants. Ruffin characterizes Count VIII as seeking "indemnification for actions taken" in the other counts. (*See* D.E. 157, Ex. 2 at 4.) The statute that Ruffin apparently refers to in Count VIII, namely 745 ILCS 10/2-301 (2006), does not create a separate cause of action for litigants, and instead simply states that the provisions of the Illinois Local Governmental And Governmental Employees Tort Immunity Act do not "relieve a local public entity of its duty to indemnify or insure" its employees. *See id.* The Court will address indemnification when and if any liability is ever found.

argument based on legal disability. (*See* D.E. 157, Ex. 2 at 4-5.) Because Ruffin has raised a putative tolling argument, the Court will address the limited exceptions under Illinois law that can toll an applicable statute of limitations. The Court finds that it is premature, at this stage of the litigation, to dismiss Ruffin's state law claims against the KC Defendants as time-barred. Again, the summary judgment context is more appropriate.

        1.    Equitable Tolling

Under Illinois law, equitable tolling can be in play where "a defendant has actively misled the plaintiff; the plaintiff has, in some extraordinary way, been prevented from asserting her rights in a timely manner; or the plaintiff asserted her rights mistakenly in the wrong forum." *Weatherly v. Illinois Human Rights Comm'n*, 788 N.E.2d 1175, 1180 (Ill. App. Ct. 2003) (citation omitted). Illinois precedent teaches that "principles of equitable tolling must be applied with caution." *Block v. Pepper Constr. Co.*, 710 N.E.2d 85, 91 (Ill. App. Ct. 1999) (collecting cases). In applying the Illinois doctrine of tolling, the Seventh Circuit has noted that "[a]n essential element [of equitable tolling] is that the plaintiff have exercised due diligence; in other words that he have acted reasonably" despite failing to sue within the limitations period. *Shropshear v. Corp. Counsel of the City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001) (collecting cases).

In the present matter, there is no suggestion that any of the KC Defendants actively misled Ruffin, or that Ruffin mistakenly asserted his rights in the wrong forum. Moreover, and independently, there is strong evidence suggesting that equitable tolling should not apply because Plaintiff did not exercise due diligence in failing to sue within the limitations period. The record includes a Notice of Intent to Sue form and a letter regarding that notice, which are referenced by

38

Ruffin in the Second Amended Complaint (Second Amended Complaint at 4), and are referenced and attached by Ruffin to his original Complaint. (*See* Complaint at 72 (Notice of Intent To Sue filed with the Circuit Clerk for Kane Count on July 26, 2000) & 73 (July 26, 2000 letter from Ruffin to the Circuit Court of Kane County stating that he had originally filed the letter on June 1, 2000 in the Kane County Court in Elgin, Illinois).) The Notice of Intent to Sue indicates that, as of June 1, 2000, Ruffin had the intention to sue in state court "for damages from gun shot wounds suferred [sic] from police officers for Kane County on 26 day of June 1999" (*see* Complaint at 72)—conduct that Ruffin claims under both the Aggravated Battery and the Willful and Wanton Conduct counts (*see* D.E. 157, Ex. 2 at 4)—yet Ruffin delayed filing suit in any court until over a year later, or until June 25, 2001. Accordingly, Ruffin's unaccounted-for delay and corresponding lack of diligence would appear to preclude any application of equitable tolling.

Finally, in considering whether the "extraordinary" circumstance aspect of the Illinois doctrine of equitable tolling applies, the Court believes that Ruffin's allegations regarding constraints on his ability to file based on his medical condition are properly addressed under the tolling doctrine relating to legal disability. Because Ruffin raises no other extraordinary circumstances, the Court finds no evidence that equitable tolling should apply. *See, e.g.*, *Weatherly*, 788 N.E.2d at 1180 (finding that equitable tolling did not apply where none of the material before the court supported the proposition that the plaintiff was misled in any way or was somehow prevented from bringing her claim).

> 2.    Fraudulent Concealment

Ruffin does not contend, nor does it appear, that the doctrine of fraudulent concealment is

at play. The applicable Illinois doctrine would require that the KC Defendants would have fraudulently concealed the existence of the *cause of action* against them. *See, e.g., Smith v. City of Chicago Heights*, 951 F.2d 834, 837 (7th Cir. 1992) (teaching that the Illinois fraudulent concealment statute, 735 ILCS 5/13-215, has been "unequivocally construed . . . to reach only fraudulent concealment of the cause of action–not fraudulent concealment of the tortfeasor.") (collecting cases). Where a plaintiff claims that the fraudulent concealment of a cause of action has tolled the statute of limitations, the plaintiff must demonstrate that the defendant "made misrepresentations or performed acts which were known to be false, with the intent to deceive the plaintiff, and upon which the plaintiff detrimentally relied." *Foster v. Plaut*, 625 N.E.2d 198, 203 (Ill. App. Ct. 1993) (collecting cases) (rejecting plaintiff's fraudulent concealment argument and granting defendant's motion to dismiss plaintiff's claims because they were not timely filed). Further, even where a plaintiff has produced evidence tending to show that the defendant's conduct constituted fraudulent concealment, and which actually prevented discovery of the claim, the limitations period will not be tolled "where the plaintiff could have discovered the cause of action with the exercise of ordinary diligence." *Foster*, 625 N.E.2d at 203 (internal citation omitted).

For reasons similar to those given in the Court's analysis of equitable tolling, the doctrine of fraudulent concealment also appears inapplicable in the present matter. Once again, there are simply no allegations suggesting that any of the KC Defendants in any affirmative way concealed causes of action against them, much less that Ruffin relied on any such concealment by the Defendants. Furthermore, Ruffin's filing of the Notice of Intent to Sue in state court for the gun shot wounds inflicted during his arrest indicates that he had "discovered" his causes of action for

Aggravated Battery and Willful and Wanton Conduct (or, at the very least, that with reasonable diligence, he could have timely transposed his intent to sue for "gun shot wounds" into these sorts of causes of action). *See, e.g.*, *Foster*, 625 N.E.2d at 203 ("In general, where a plaintiff alleges that the fraudulent concealment of a cause of action has tolled the statute of limitations, it is necessary to show affirmative acts by the defendant which were designed to prevent, *and in fact did prevent,* the discovery of the claim.") (emphasis added; collecting cases). It is difficult to see how anyone could have concealed from Plaintiff that he had been arrested and taken into custody, that he had been shot, and that he had resulting medical issues. Accordingly, the Court concludes that any tolling based on fraudulent concealment appears to be unwarranted.

      3.     Equitable Estoppel

In an effort to be thorough, the Court further notes that the Illinois doctrine of equitable estoppel can in rare instances toll the running of a statute of limitations when a defendant has taken active steps to prevent the plaintiff from suing–with a paradigm situation being where the defendant has affirmatively promised not to plead the applicable statute of limitations. *See, e.g.*, *Singletary v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chicago*, 9 F.3d 1236, 1241 (7th Cir. 1993) (applying Illinois law). The doctrine contemplates that "'the plaintiff has discovered, or . . . should have discovered, that the defendant injured him, and denotes efforts by the defendant–above and beyond the wrongdoing upon which the plaintiff's claim is founded–to prevent the plaintiff from suing in time.'" *Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Medical School*, 167 F.3d 1170, 1174 (7th Cir. 1999) (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)) (punctuation in *Hentosh*); *accord, e.g.*, *Singletary*, 9 F.3d at 1241 (7th Cir. 1993). In addition, Illinois law incorporates a concept of

41

due diligence as to a party seeking to invoke equitable estoppel. *See, e.g., Shropshear*, 275 F.3d at 598 ("[L]ack of due diligence is a defense under Illinois's doctrine of fraudulent concealment; it likewise is a defense under Illinois's umbrella doctrine of equitable estoppel.") (citing *Nickels v. Reid*, 661 N.E.2d 442, 447-48 (Ill. App. Ct. 1996)).

As was already discussed, nothing in the pleadings or in the realm of reasonable inferences suggests that any conduct or representation by the KC Defendants prevented Ruffin from filing his state law claims before the statute of limitations had run. *See Singletary*, 9 F.3d at 1241. Therefore, equitable estoppel does not apply.

      4.     Legal Disability

Finally, the Court considers whether the statute of limitations on Ruffin's state law claims should be tolled based on Ruffin being under a legal disability. Ruffin raises this argument in his response to the KC Defendants' motion. (*See* D.E. 157, Ex. 2 at 4.)

The Illinois legislature has provided for tolling of the statute of limitations when a potential plaintiff is under a legal disability at the time a cause of action accrues. *See* 735 ILCS 5/13-211 (2006); *accord, e.g., Parks v. Kownacki*, 737 N.E.2d 287, 295 (Ill. 2000) ("When a potential plaintiff has a legal disability, the statute of limitations is tolled until the plaintiff is no longer disabled.") (citing 735 ILCS 5/13-211 (1998)). The individual thereafter has two years to bring his or her action after the legal disability is removed. *See* 735 ILCS 5/13-211.[9]

Illinois precedent teaches that "[a] person suffers from a legal disability where he or she

_____

[9] This case does not present a potential scenario where the putative plaintiff first incurs an arguable legal disability after the cause of action accrues, and before the statute of limitations period otherwise would run—for example, a plaintiff who suffers injury and falls into a year-long coma eighteen months after his cause of action accrues but six months before the limitations period otherwise runs. The Court expresses no views about such a situation.

is entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his or her estate or financial affairs." *Basham v. Hunt*, 773 N.E.2d 1213, 1221 (Ill. App. Ct. 2002) (internal quotation marks, punctuation and citation omitted); *accord, e.g.*, *Dugan v. Washington*, No. 99 C 4382, 2000 WL 336554, at *4 (N.D. Ill. Mar. 28, 2000) (Zagel, J.) (citing *Estate of Riha v. Christ Hospital*, 544 N.E.2d 403 (Ill. App. Ct. 1989)). In a personal injury case, a person is not legally disabled if he or she can comprehend the nature of the injury and its implications. *See In re John Doe*, 703 N.E.2d 413, 414 (Ill. App. Ct. 1998) (citation omitted). A review of the precedent in this area makes clear that the standard for tolling based on a legal disability is a "stringent test." *Dikcis v. Indopco, Inc.*, No. 96 C 5526, 1997 WL 211218, at *9 (N.D. Ill. Apr. 18, 1997) (Castillo, J.) (discussing the "exacting" standard for establishing a legal disability set forth in *Sille v. McCann Constr. Specialities Co.*, 638 N.E.2d 676, 679 (Ill. App. Ct. 1994)).

Ruffin's putative tolling argument arises from the following statement in his response memorandum, in addition to the allegations of his injuries contained in his Second Amended Complaint: Ruffin claims that "as an [sic] direct result from his injuries of being shot in spine, that left him an incomplete quadriplegia (Disable) [sic] and unable to write or type, which prevented him from bringing his lawsuit within the statute of limitations" period. (*See* D.E. 157, Ex. 2 at 4-5.) At this stage of the proceedings, and with the limited information before it, the Court is unable to definitively say that the allegations relating to Ruffin's injuries and his condition following the June 26, 1999 arrest could not constitute a legal disability.

This is not to say that Ruffin would or will necessarily succeed in establishing legal disability at the summary judgment stage after appropriate discovery is allowed. There are strong

suggestions, even in the materials Ruffin himself has appended to various filings, that Ruffin may not qualify for legal disability for much or all of the time following his injuries. For example, in medical records that Ruffin appended to his initial complaint, the doctors note, *inter alia*, that, at the time of his discharge from therapy in November 1999, Ruffin had made "amazing improvement" during his preceding months of physical therapy. (Complaint at 41.) In the medical records offered by Ruffin, as early as July 1999 (or some two weeks after Ruffin's apprehension), his treating doctors variously describe him as "[a]lert and oriented" (*id.* at 45), and "alert; fully oriented." (*Id.* at 50.) During his months of physical therapy, Ruffin also apparently was sufficiently alert and attentive to undertake videogame-playing: the Chief of the Winnebago County Correctional Facility made an exception to the prison rules and permitted Ruffin access to a videogame, which also "appeared to help in the physical therapy of his fingers and small joints of the hand." (*Id.* at 38; *see also id.* (comments of treating physician commending the Chief for the kind and attentive treatment he afforded Ruffin during his physical therapy program at the hospital).) If Ruffin was sufficiently attentive to play videogames and undergo an extended physical therapy program, during even the early stages of which he was repeatedly described as "alert" and "fully oriented," it may well be the case that he never was suffering from a sufficiently dire set of circumstances that he was under a "legal disability" such that the generally applicable statute of limitations was tolled. *See, e.g.*, *In re John Doe*, 703 N.E.2d at 414 (citation omitted) (holding that, in a personal injury scenario, a person is not legally disabled if he or she can comprehend the nature of the injury and its implications).

Moreover, even if one assumes that Ruffin was initially under a legal disability for some period of time, it also would be necessary to see when the legal disability was removed, such that

the statute of limitations clock would start up again. In this regard, courts in this judicial district have found that evidence that an individual has been pursuing litigation-related activities strongly suggests that the individual is not under, or is no longer under, a legal disability for tolling purposes. *See, e.g., Dikcis*, 1997 WL 211218, at *9 (finding that plaintiff's complaint did not suggest that he was under a legal disability, because plaintiff "clearly comprehended at least one of his causes of action—he filed a charge of disability discrimination with the EEOC" during the limitations period); *accord, e.g., Bolden v. WestAmerica Mortgage Co.*, No. 97 C 4476, 1999 WL 183762, at *2 (N.D. Ill. Mar. 25, 1999) (Plunkett, J.) (discussing, in the context of a motion to reconsider, the court's earlier decision that the plaintiff was not under a legal disability "because her allegations showed that she had been fighting the foreclosure action in state court, bankruptcy court and now federal court throughout the period of her purported disability . . . .").

As has been previously discussed, in the Second Amended Complaint, Ruffin avers that he "filed a notice of intent to sue Kane County on June 1, 2000." (Second Amended Complaint at 4.) In addition, the Second Amended Complaint also reflects that Ruffin filed suit against one of his criminal attorneys in October 2000. (*See id.* at 5.)[10] Thus, according to Ruffin's own pleadings, by June 1, 2000 at the latest, Ruffin was engaged in litigation-related activities connected to the June 26, 1999 incident. That Ruffin could conduct this activity strongly suggests that he could comprehend the nature of his injuries and their implications and was

---

[10] In addition, Defendants argue that in January 2000, Ruffin was found to be fit for his criminal trial and that this "directly undercut[s] any assertion that his disabilities prevented him from actively engaging in the judicial process." (D.E. 161 at 2.) Defendants do not cite any authority for the proposition that a finding of fitness for criminal trial automatically precludes a finding of legal disability. For the reasons stated below regarding the correct stage of the legal proceedings to address such tolling-related arguments, the Court declines to find Ruffin's claims barred on this basis at this time.

capable of making and communicating decisions regarding his person, and so he was no longer under a legal disability. *See, e.g., Dikcis,* 1997 WL 211218, at *9. Thus, it appears that any legal disability impeding Ruffin (there may never have been any—the facts are not sufficiently clear to reach a conclusion at this time) would be considered to have lifted, at the latest, by June 1, 2000.

The final step of the tolling analysis would be to assess whether, once any potential legal disability was removed on June 1, 2000, Ruffin properly filed his state law claims against the KC Defendants. Illinois precedent instructs that the one-year statute of limitations in the Illinois Tort Immunity Act, "controls over section 13-211 [the legal disability tolling provision], and therefore, the plaintiff would not have had the full two years provided for in section 13-211" once his legal disability lifted. *Basham,* 773 N.E.2d at 1223 (reviewing applicable Illinois authority); *accord, e.g., Moore v. City of Chicago,* No. 05 C 5868, 2006 WL 452428, at *2 (N.D. Ill. Feb. 21, 2006) (Hart, J.) (finding that the one-year time period of the Illinois Tort Immunity Act would apply to state law claim by minor against municipal defendant) (collecting cases). Therefore, Ruffin's state law claims had to be brought within one year of the alleged conduct.

In regards to the KC Defendants, Ruffin did not file his Complaint until June 25, 2001, which, assuming *arguendo* that Ruffin was at one point under a legal disability, falls outside the one year allotted under the Illinois Tort Immunity Act from the point that his legal disability was lifted. *See Basham,* 773 N.E.2d at 1223. However, the Court cannot definitively resolve all of the putative tolling issues at this stage of the proceedings. Although the Court believes that the discussion above regarding tolling accurately reflects applicable Seventh Circuit and Illinois precedent, in order to properly analyze some of the tolling doctrines, and in particular any potential tolling based on legal disability, more information than is available in the Second

46

Amended Complaint is required to rule definitively. For example, more information is needed to resolve material issues concerning Ruffin's medical condition and his ability to manage his personal affairs following the arrest. In other words, the validity of the affirmative defense based on the statute of limitations is not "apparent from the complaint itself" or "unmistakable, so that the suit is fairly described as frivolous." *Walker*, 288 F.3d at 1010 (reversing a district court's dismissal of a *pro se* complaint on the basis of failure to survive a putative affirmative defense, where information about the matter was not clearcut).

Therefore, although there is persuasive evidence that Ruffin's state law claims may be (indeed, likely are) time-barred, it cannot be definitively said that Ruffin has pleaded himself out of court by alleging all the necessary ingredients of the defense in his Second Amended Complaint. *See, e.g., United States Gypsum Co.*, 350 F.3d at 626. As directed by applicable Seventh Circuit precedent, the Court will permit the KC Defendants to answer the complaint and, if they wish, to raise time-bar as an affirmative defense. *See, e.g., id.* Accordingly, the Court respectfully denies the KC Defendants' motions to dismiss the state law claims without prejudice to their ability to raise this issue anew after appropriate discovery has been undertaken on the time-bar issues.

## CONCLUSION

For the reasons stated above, Count V is dismissed insofar as it is pleaded against Sheriff Ramsey in his official capacity. Count VIII (the non-existent claim under Illinois Tort Immunity Act) is also dismissed. The request to order a criminal investigation of the Defendants by the U.S. Attorney's Office is dismissed as well. Furthermore, the Court respectfully grants Officer Shafer's motion to dismiss all other claims against him. (D.E. 142.) Finally, the Court denies the KC Defendants' motion to dismiss all other claims. (D.E. 140.)

So ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Date: 7/21/06